UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

```
_____
                               )
    In re:                     )
                               )
    GARRY S. ROBERT,           )     Chapter 13
    MARY A. ROBERT,            )     Case No. 04-42266-HJB
                               )
           Debtors             )
_____)
                               )
    GARRY S. ROBERT,           )     Adversary Proceeding
    MARY A. ROBERT,            )     No. 09-4159
                               )
           Plaintiffs,         )
                               )
    v.                         )
                               )
    HOUSEHOLD FINANCE CORP. II )
                               )
           Defendant.          )
_____)
```

**MEMORANDUM OF DECISION**

Before the Court is a motion filed by the defendant in this adversary proceeding seeking dismissal of the complaint filed by the plaintiffs here, debtors in the underlying Chapter 13 case. For the reasons set forth herein – notably, that the debtors failed to disclose their claims against the defendant in a prior Chapter 7 case – the motion will be granted.

1

I.   FACTS AND TRAVEL OF THE CASE

In November 2001, Garry and Mary Robert (the "Debtors") refinanced the first mortgage on their home in North Adams, Massachusetts (the "Property") with a $146,414.56 loan (the "Refinancing") from Household Finance Corp. II ("Household Finance") (the "First Mortgage").

On January 2, 2003, the Debtors filed a petition seeking relief under Chapter 7 of the United States Bankruptcy Code[1] (the "Chapter 7 Case").[2]  On the same date, the Debtors filed the various financial schedules and statements required by the Bankruptcy Code and rules (the "Chapter 7 Schedules") and declared, under the pains and penalties of perjury, that the information contained in those Chapter 7 Schedules was true and accurate to the best of their knowledge and belief.  On Schedule A – Real Property, the Debtors disclosed their ownership of the Property and represented that the Property's then current market value was $140,000.  On Schedule D – Secured Creditors, the Debtors listed two secured claims against the Property: the First Mortgage and a second mortgage also held by Household Finance (the "Second Mortgage").[3]  On Schedule C – Property Claimed as Exempt, the Debtors elected to take the exemptions provided by the

---

[1] Unless otherwise specified, all statutory and section references contained in this memorandum are to Title 11 of the United States Code (the "Bankruptcy Code" or the "Code"), 11 U.S.C. §§ 101 et seq.

[2] See case number 03-40017-HJB, of which the Court takes judicial notice, including the contents of the docket.  See Sullivan v. Decision One Mortgage (In re Sullivan), 346 B.R. 4, 31 (Bankr. D. Mass. 2006).

[3] At some point after the Refinancing, Household Finance extended an additional loan to the Debtors.  On Schedule D, the Debtors listed the outstanding amount of this second loan as $26,249.43.

2

Bankruptcy Code.  See 11 U.S.C. § 522(b)(1), (d) (2003).  The Debtors listed the value of their claimed exemption in the Property as $0.00.

On Schedule B – Personal Property, the Debtors responded "None" to the question of whether they held any "contingent and unliquidated claims . . . , counterclaims, . . . [or] rights to setoff" at the time the case was filed.  On their Statement of Intention, the Debtors indicated an intent to reaffirm their obligations to Household Finance under § 522(c) of the Code, although no reaffirmation agreement was ever filed.  And on Schedule D – Creditors Holding Secured Claims, they left blank the column which questioned whether the mortgages held by Household Finance were disputed.

The Chapter 7 Case proceeded fairly uneventfully: the meeting of creditors required by § 341 was held and concluded on January 27, 2003; the Chapter 7 trustee reported that no assets were available for distribution to creditors; the Court issued an order of discharge on April 3, 2003 (relieving the Debtors of the more than $50,000 in unsecured debts disclosed on their Schedule F); and the case was closed on April 8, 2003.

The following year, on April 21, 2004, the Debtors filed their second and current bankruptcy case, this time under Chapter 13 (the "Chapter 13 Case").  Schedule A lists the Debtors' ownership interest in the Property, this time estimating the market value at $99,300 (a reduction of 29% over 15 months).  On Schedule D, the Debtors list only the First Mortgage as a secured claim, again without indication that the claim is disputed in any way.  This time, however, the Second Mortgage is listed as an unsecured claim on Schedule F, consistent with the Debtors' proposed treatment of the claim through their Chapter 13 plan.  As in the Chapter 7 Case, the Debtors responded "None" to the question

3

of whether they held any "contingent and unliquidated claims . . . , counterclaims, . . . [or] rights to setoff."

The Court confirmed the Debtors' Chapter 13 plan on September 21, 2004, and confirmed an amended plan on August 23, 2006. Under each plan, the Debtors proposed to pay the prepetition arrearage on the Refinancing loan through the plan and to make their monthly postpetition payments directly to Household Finance.[4] Both confirmation orders contained identical language stating that Household Finance will "retain[ ] its lien on the [P]roperty" and the Debtors will "continue to make regular monthly payments" to Household Finance.

Over the course of the Chapter 13 Case, Household Finance has filed two motions requesting relief from the automatic stay imposed by § 362(a). In the first, filed on January 27, 2006, Household Finance alleged that the Debtors had failed to make two postpetition mortgage payments. That motion was resolved by a Court-approved stipulation requiring the Debtors to make certain payments to Household Finance and providing that the remaining postpetition arrears would be added to the end of the loan.

On September 3, 2009, Household Finance filed its second motion seeking relief from the automatic stay (the "Motion for Relief"), contending that the Debtors were seven months in arrears postpetition. The Debtors objected, maintaining that they were, at most, two months behind in their mortgage payments. In their objection, the Debtors claimed that there was an "ongoing dispute over payments." (Resp. to Mot. for Relief from Stay ¶ 5.e.)

---

[4] In each of the Chapter 13 plans, the Debtors sought to treat the Second Mortgage as an unsecured claim, as the value of the Property rendered the Second Mortgage wholly unsecured. See In re Mann, 249 B.R. 831 (B.A.P. 1st Cir. 2000). Household Finance did not object to the treatment of either the First or Second Mortgages under the Debtors' plans.

4

The Debtors also stated that a "QWR [Qualified Written Request] was sent with specific documents requested" from Household Finance. (Resp. to Mot. for Relief from Stay 2.) There is no indication that those specifically-requested documents were not received, but the Debtors alleged that Household Finance did not provide documents "that would resolve the on-going dispute." (Resp. to Mot. for Relief from Stay ¶ 5.e.) This "dispute" regarding application of payments was not detailed in the Debtors' opposition, nor did the Debtors specify how Household Finance's document production was inadequate. Instead, the Debtors summarily stated that the documents provided by Household Finance "at best are confusing, at worst intentionally obfuscating, and probably merely carelessly printed from a computer without checking for any accuracy of meaningfulness [sic]." (Resp. to Mot. for Relief from Stay 2.)

The Debtors followed their opposition to the Motion for Relief with the filing of this adversary proceeding on October 1, 2009, and the parties have assented to consolidation of the Motion for Relief with this action. In the complaint (the "Complaint"), the Debtors seek a rescission of the Refinancing transaction, actual and statutory damages, attorneys fees and costs, and a determination of Household Finance's secured status. Their demands for relief are predicated on Household Finance's alleged violations of the federal Truth in Lending Act (the "TILA"), 15 U.S.C. §§ 1601 et seq., and its implementing regulations ("Regulation Z"), 12 C.F.R. § 226; the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ("MGL") ch. 140D, §§ 1 et seq.; the Real Estate Settlement Procedures Act ("RESPA"); MGL ch. 183, § 63; 12 U.S.C. § 2605 ("Regulation X"); the Massachusetts consumer protection statute, MGL ch. 93A ("Chapter 93A"); the "Massachusetts high cost loan statute;" and "common law." (Compl. § I.)

5

Household Finance moved to dismiss the Debtors' Complaint (the "Motion to Dismiss") under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), and the Debtors objected. At the hearing on the motion and the Debtors' objection thereto (the "Hearing"), the Court took the matter under advisement and allowed the parties additional time to file supplemental briefs, which they have done.

II.    POSITIONS OF THE PARTIES[5]

A majority of the counts in the Complaint are predicated on Household Finance's conduct prior to and at the time the Refinancing transaction closed. The Debtors complain that Household Finance first misled the Debtors into believing that the loan they would receive would be the "best available" and on terms favorable to the Debtors. The Debtors maintain that Household Finance took advantage of the Debtors' lack of sophistication and engaged in so-called "bait-and-switch" behavior, ultimately providing the Debtors with an inferior, high-cost, adjustable-rate mortgage loan. These misrepresentations, according to the Debtors, warrant damages for deceit under Massachusetts common law. In addition, the Debtors say that Household Finance failed to provide them with the statutorily-prescribed number of copies of the disclosure documents required by the TILA and MCCCDA (the "Disclosures") and that the Disclosures contained inaccurate recitations of, *inter alia*, the finance charge and annual percentage rate. According to the Debtors, these inaccuracies entitle them to rescind the Refinancing under the TILA or MCCCDA and also

---

[5] The parties raised various legal arguments in their pleadings and at the Hearing on the Motion to Dismiss. Because this case ultimately rests on fairly narrow grounds, however, only a (relatively) brief summary of those arguments is needed here.

entitle them to damages under the TILA, MCCCDA, and Chapter 93A. And, apart from the factual circumstances involving the Refinancing, the Debtors allege in the Complaint that Household Finance is liable for breach of contract and Chapter 93A damages because it has "improperly credited monies between the interest and principal accounts." (Compl. ¶ 45.)

In its Motion to Dismiss, Household Finance argues that each claim raised by the Debtors is barred by corresponding statutes of limitations, ranging from one to six years and commencing at the time of the negotiations and closing of the Refinancing transaction. And as for the Debtors' contention that payments have been wrongly applied, Household Finance says that the Debtors' conclusory statements, absent any explanation of *how* the Debtors believe any payments were misapplied, are insufficient to state any cognizable claim.

In response, the Debtors admit that the statutes of limitations relevant to many of their claims have expired, but only if measured from the date the Refinancing was consummated. The Debtors argue instead that the limitations periods should be tolled or should be calculated from the date the Debtors "discovered" that they had claims against Household Finance. Moreover, say the Debtors, even if some of the claims are barred by the statutes of limitations, others (such as the breach of contract claims) arose each time the Debtors made a payment to Household Finance, and those claims are thus timely filed.

Household Finance takes issue with the "discovery rule" as the Debtors apply it. According to Household Finance, all of the claims predicated on Household Finance's alleged misrepresentations and inadequate Disclosures (the "Refinancing Claims") arose at or near the time the loan documents were signed or at the time the proceeds were

disbursed, and not at some later point when the Debtors say they finally realized they might have claims against Household Finance. Relying on <u>Salois v. Dime Savings Bank of New York</u>, 128 F.3d 20 (1st Cir. 1997), Household Finance argues that because the Debtors possessed all of the relevant information necessary to determine the existence of any purported claims in November 2001, and because they have not alleged facts sufficient to show that Household Finance attempted to conceal the causes of action, the Debtors cannot rely on the doctrine of equitable tolling to extend the limitations periods for their claims. Finally, to the extent the Debtors claim that the violations arising from the circumstances surrounding the Refinancing continue each time the Debtors make a payment on the Refinancing loan, Household Finance says this "continuing violation" theory has been consistently rejected by various courts and commentators and should not be found viable here.

In its supplemental brief, Household Finance also raises judicial estoppel as an additional ground for dismissal of the Complaint. Noting that the Debtors' claims against Household Finance were not disclosed in the Chapter 7 Schedules, Chapter 13 Schedules, or confirmed plans, Household Finance maintains that the Debtors are judicially estopped from pursuing their claims in this adversary proceeding. Household Finance argues that the Debtors have repeatedly represented to the Court that they have no claims against Household Finance (by failing to disclose any such claims in their schedules or plan), and have received the benefit of those representations through Household Finance's forbearance and willingness to enter into the Stipulation and through the Court's confirmation of their Chapter 13 plans. As such, Household Finance says, the Debtors are now barred from asserting these claims and challenging the mortgage.

III.   DISCUSSION

   A.   **Motion to Dismiss Standard**

The standards for evaluating a motion to dismiss brought under Federal Rule 12(b)(6) are well-known and simply stated. In deciding a motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, drawing all reasonable inferences in favor of the non-moving party." Damon v. Moore, 520 F.3d 98, 102 (1st Cir. 2009) (citing Stanton v. Metro Corp., 438 F.3d 119, 123-24 (1st Cir. 2006)). In order to sufficiently state a claim, the complaint "does not need detailed factual allegations," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), but nonetheless must provide facts sufficient "to raise a right to relief above the speculative level." Id. Thus,

> [the court] differentiate[s] between well-pleaded facts, on the one hand, and "bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like," on the other hand; the former must be credited, but the latter can safely be ignored.

LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (quoting, citing Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).[6]

   B.   **Refinancing Claims**

In Salois v. Dime Savings Bank of New York, the First Circuit Court of Appeals held that a plaintiff's claims predicated on misrepresentation, fraud, deceit, and TILA, MCCCDA, and Chapter 93A violations in connection with certain mortgage transactions arose when the transactions were consummated – "when [the lender] allegedly induced them to sign

---

[6] See also Sec. & Exch. Comm'n v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too meager, vague or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.") (citing Twombly, 550 U.S. at 555).

9

loan contracts by misrepresenting and/or omitting facts about the terms of the mortgage [and] charged them excessive closing fees." 128 F.3d 20, 25 (1st Cir. 1997). This holding was compelled by the unassailable proposition that "[a] cause of action generally accrues at the time of the plaintiff's injury." Id. Therefore, to the extent the Debtors rely on a "continuing violation" theory with respect to the Refinancing Claims, the Court rejects that argument as inconsistent with binding First Circuit case law. See Salois, 128 F.3d at 25.[7] As in Salois, the Debtors' claims related to Household Finance's alleged misrepresentations arose at the time Household Finance representatives misled the Debtors regarding the type of loan they would be offered. And the TILA, MCCCDA, and Chapter 93A violations all arose when Household Finance provided them with the allegedly defective and inadequate Disclosures. That is, each of the Debtors' Refinancing Claims arose no later than November 2001.

Since each of the Refinancing Claims arose, at the latest, in November 2001, this Court need not go into a detailed analysis of the parties' various arguments regarding statutes of limitations, tolling, or judicial estoppel. Instead, the Court concludes that the

---

[7] Plaintiffs have generally been unsuccessful in persuading courts in other circuits to accept such "continuing violation" theories under the TILA and similar state statutes. See, e.g., Jones v. Transohio Sav. Ass'n, 747 F.2d 1037, 1043 (6th Cir. 1984) (although the statute of limitations on TILA claims may be equitably tolled, the claim arises when the contract is entered into or upon the actual extension of credit, if extended after the contract is executed); Bartholomew v. Northampton Nat'l Bank, 584 F.2d 1288, 1296 (3d Cir. 1978) (in mortgage transactions, "the required disclosures under TILA are to be made as of the time that credit is extended, 15 U.S.C. § 1638(b), and it is as of that time that the adequacy and accuracy of the disclosures are to be measured"); Wachtel v. West, 476 F.2d 1062, 1065 (6th Cir. 1973) (failure to provide disclosures required by TILA gives rise to violation at the time the contract for extension of credit is completed or "at the latest, when the parties perform their contract"); Khan v. Dime Sav. Bank of N.Y., 1 Mass L. Rptr. 339, 1993 WL 818711 (Mass. Super. 1993) (disclosure violations under TILA and MCCCDA arise at the time the transaction is consummated; "there is no continuing violation").

10

Debtors have no standing to bring the Refinancing Claims, even if viable, as those claims would belong to their Chapter 7 bankruptcy estate.

Because the Refinancing Claims arose in 2001, prior to the filing of the 2003 Chapter 7 Case, the Debtors had an obligation to disclose their potential claims against Household Finance in the Chapter 7 Schedules. See 11 U.S.C. § 541(a). Regardless of whether the Debtors' failure to disclose the Refinancing Claims was intentional or inadvertent, those claims nonetheless became property of the Chapter 7 bankruptcy estate when the Chapter 7 Case was filed. See id.[8] A Chapter 7 trustee "'steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of action[ ],'" DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak Fire Ins. Co., 448 F.3d 460, 463 (1st Cir. 2006) (quoting In re Rare Coin Galleries, Inc., 862 F.2d 896, 901 (1st Cir.1988)), and has exclusive standing to prosecute prepetition claims, id.; see also Parker, 365 F.3d at 1272.

While *disclosed* assets are deemed abandoned upon the closing of a Chapter 7 bankruptcy estate, 11 U.S.C. § 554(c), "'property that is not formally scheduled is not abandoned and therefore remains part of the estate,'" Welsh, 199 B.R. at 229 (quoting Rosenshein v. Kleban, 918 F.Supp. 98, 102-03 (S.D.N.Y. 1996)).[9] Because the Debtors' undisclosed Refinancing Claims were never abandoned by operation of § 554, they remain

---

[8] See also Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004); In re Dooley, 399 B.R. 340, 348 (Bankr. D. Mass. 2009); Welsh v. Quabbin Timber, Inc., 199 B.R. 224, 229 (D. Mass. 1996) ("A cause of action 'is a property right which passes to the trustee in bankruptcy, even if such cause of action is not included in schedules filed with the Bankruptcy Court.'") (quoting Carlock v. Pillsbury Co., 719 F. Supp. 791, 856 (D. Minn. 1989)).

[9] See also 11 U.S.C. § 554(d) ("Property of the estate that is not abandoned . . . and that is not administered in the case remains property of the estate."); Parker, 365 F.3d at 1272.

property of the Chapter 7 bankruptcy estate and the former Chapter 7 trustee is the only party with standing to prosecute those claims.[10]  Accordingly, the Debtors cannot pursue those claims here, and the Court must grant the Motion to Dismiss as to all claims that arose in connection with the Refinancing.

### C. Misapplication of Payments

In addition to claims arising from the circumstances surrounding the negotiation and consummation of the Refinancing, the Debtors have raised claims that, they say, arose after the filing of the Chapter 13 Case.  In the Complaint, the Debtors alleged that Household Finance "improperly credited monies between interest and principal accounts." (Compl. ¶ 45.) Attached to the Debtors' brief are two documents whose contents, context, and provenance are left unexplained.  According to the Debtors, these "attached Exhibits illustrate, when combined with the Response to the Qualified Written Request,[11] Defendants breached their contractual obligations to Plaintiff." (Pls.' Suppl. Br. ¶ 10.)  The Debtors then state that "[a]n additional breach occurred in the servicing of the loan," and

---

[10] See Brooks v. Beatty, 1994 WL 224160, *3 (1st Cir. May 27, 1994) (plaintiff lacked standing to bring claim that existed prior to Chapter 7 bankruptcy filing but was never disclosed in the bankruptcy case; claim remained property of bankruptcy estate and only Chapter 7 trustee had standing to pursue the claim); Schafer v. Decision One Mortgage Corp., 2009 WL 1532048, *4 (E.D. Pa. May 29, 2009) (where plaintiff failed to disclose TILA claims that arose prior to plaintiff's filing Chapter 7 bankruptcy petition, she could not later assert the claims in her own name, as the claims "remain property of the estate, and only the trustee in bankruptcy has the standing to pursue them"); Tennyson v. Challenge Realty (In re Tennyson), 313 B.R. 402, 406 (Bankr. W.D. Ky. 2004) (undisclosed rescission claim was not abandoned by Chapter 7 Trustee by operation of § 554; therefore, the claim remained property of the bankruptcy estate and the Chapter 7 trustee was the party with standing to pursue the claims); accord Graupner v. Town of Brookfield, 450 F. Supp. 2d 119, 129 (D. Mass. 2006) (where plaintiff failed to disclose claim in Chapter 7 bankruptcy case, party with standing to bring claim remained the Chapter 7 trustee).

[11] As far as the Court is able to discern, it has not been provided with the referenced response.

12

that Household Finance "has not credited payments correctly." (Pls.' Suppl. Br. ¶¶ 10, 11.) Nowhere do the Debtors identify *their* view of how payments should have been applied. Nowhere do the Debtors identify the alleged error in Household Finance's application of payments. Nowhere do the Debtors identify a *single* payment application that would indicate a potential breach of the contract's terms. The Debtors have not only failed to state "facts *sufficient* to justify recovery on any cognizable theory," LaChapelle, 142 F.3d at 508 (emphasis supplied), they have failed to supply the Court with *any* facts at all. Accordingly, because no other viable claims remain, the Court must grant the Motion to Dismiss in its entirety.

IV.    CONCLUSION

Because the Debtors' claims arising from the November 2001 refinancing of their Property were never disclosed and, therefore, never abandoned during their 2003 Chapter 7 Bankruptcy Case, the Debtors lack standing to pursue those causes of action. And because the Debtors have pled no facts in support of any remaining claims, the Court will grant Household Finance's Motion to Dismiss the Complaint and grant judgment to Household Finance. Household Finance's Motion for Relief will be set for further hearing so that the Court may evaluate the current circumstances associated therewith.

A judgment and orders in conformity with this Memorandum shall issue forthwith.

DATED: July 7, 2010                    By the Court,

                                       _____
                                       Henry J. Boroff
                                       United States Bankruptcy Judge

13